| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |

------------------------------------------------------------x
In re:                                              :   Chapter 11
                                                    :
**MARKETXT HOLDINGS CORP.,**                        :   Case No. 04-12078(ALG)
                                                    :
                                                    :
                            Debtor.                 :
                                                    :
------------------------------------------------------------x
**ALAN NISSELSON, as Chapter 11**                   :
**Trustee of MarketXT Holdings Corp., and the**     :
**Official Committee of Unsecured Creditors,**      :
                                                    :
**Plaintiffs,**                                     :
                                                    :
                                                    :   Adv. Proc. No. 05-01268
-v.-                                                :
                                                    :
**EMPYREAN INVESTMENT FUND, LP,**                   :
**EMPYREAN GENERAL PARTNER, LLC,**                  :
**ASH MASTER FUND, LP, ASH MASTER**                 :
**FUND II, LLC, ASH MASTER FUND II,**               :
**LP, ASH FUND LP f/k/a EMPYREAN**                  :
**FUND LP, ASH FUND II LP, ASH**                    :
**CAPITAL, LLC f/k/a, ASH CAPITAL**                 :
**MANAGEMENT, ASH GENERAL**                         :
**PARTNER, LLC, ASH OFFSHORE**                      :
**FUND LTD, ASH GENERAL PARTNER**                   :
**OFFSHORE, LTD, RAUF ASHRAF,**                     :
**and JOHN DOES 1 through 10,**                     :
                                                    :
                            Defendants.             :
------------------------------------------------------------x

**MEMORANDUM OPINION**

1

A P P E A R A N C E S:

BRAUNER BARON ROSENZWEIG & KLEIN, LLP
Counsel For Alan Nisselson, Chapter 11 Trustee, Plaintiff
  By:   Howard L. Simon, Esq.
          Charles A. Damato, Esq.
61 Broadway, 18th Floor
New York, New York 10006

KAYE SCHOLER LLP
Counsel For The Unsecured Creditor's Committee, Plaintiff
  By:   Lester M. Kirshenbaum, Esq.
425 Park Ave.
New York, New York 10022

BROWN RAYSMAN MILLSTEIN FELDER & STEINER, LLP
Counsel for the Defendants
  By:   Michael V. Blumenthal, Esq.
          Bruce J. Zabarauskas, Esq.
900 Third Ave.
New York, New York 10020

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of Alan Nisselson, the Chapter 11 Trustee (the "Trustee") of MarketXT Holdings Corp. (the "Debtor") to disqualify the law firm of Brown Raysman Millstein Felder & Steiner, LLP ("Brown Raysman") from representing defendants Empyrean Investment Fund, LP, Empyrean General Partner, LLC, Ash Master Fund, LP, Ash Master Fund II, LLC, Ash Master Fund II, LP, Ash Fund LP f/k/a Empyrean Fund LP, Ash Fund II LP, Ash Capital, LLC f/k/a, Ash Capital Management, Ash General Partner, LLC, Ash Offshore Fund LTD, Ash General Partner Offshore, LTD, and Rauf Ashraf (collectively, the "Ash Entities") in this adversary proceeding. As set forth below, there is a substantial relationship between the issues on which Brown Raysman previously represented the Debtor and material issues in this adversary proceeding in which Brown Raysman proposes to represent a group of entities adverse to

2

its former client. As a result, Brown Raysman is disqualified from representing the Ash Entities in this case under the relevant authority in this Circuit.

**FACTS**

**Background**

The Debtor was formed as a holding company for operating companies owned by Omar Amanat, the Debtor's founder and CEO, that engaged in securities trading. In June 2002, the Debtor sold its largest operating subsidiary (Momentum Securities) to E*Trade Financial Corp. ("E*Trade") for consideration that included more than $100 million in E*Trade stock. Pursuant to a merger agreement, the Debtor received a portion of the stock immediately, with the balance in escrow until certain performance-based goals were met. The Debtor has alleged that interference by E*Trade in its business and prospects, in conjunction with the alleged breach of fiduciary duties by others, prevented the performance goals from being satisfied and resulted in creditor action against the Debtor and a severe liquidity crisis.

In May of 2003, the Debtor retained Brown Raysman to analyze its possible claims against E*Trade. In connection with the representation, Brown Raysman prepared a memorandum outlining potential causes of action against E*Trade and analyzing the strength of the Debtor's claims and E*Trade's defenses (the "Memorandum"). While preparing the Memorandum, Brown Raysman had access to the Debtor's books and records and interviewed Amanat, Wasif Iman (the Debtor's CFO), John Araneo (the Debtor's in-house counsel), Bill Bohm (an employee), and Rory Deutsch (one of the Debtor's outside counsel). The Court has reviewed the Memorandum, dated May 29, 2003, *in camera*, and in order not to compromise its continued confidentiality will not

3

quote from it directly.  Suffice it to say that the Memorandum not only details potential causes of action against E*Trade and the value of potential recovery from E*Trade, but also E*Trade's defenses, the Debtor's risks and aspects of the Debtor's financial condition and viability.  The Memorandum confirms the obvious: in order to provide legal advice, Brown Raysman obtained confidential information on the Debtor's business during the periods before and after the sale to E*Trade, as well as on the liquidity problems that apparently existed at the time the Memorandum was written.  Indeed, at about the same time, Brown Raysman also advised the Debtor on "bankruptcy alternatives." (Letter to Trustee dated April 7, 2005 at 1.)[1]

During the period of Brown Raysman's representation, the Debtor attempted to use the unencumbered E*Trade stock that it had obtained from E*Trade in order to ameliorate or solve its liquidity problems.  It entered into a series of complicated financing transactions with the Ash Entities, the particulars of which are not relevant here, whereby the Debtor was able to garner needed cash (the "Ash Transactions").  In exchange for entering into the Ash Transactions, the Ash Entities received stock, contract rights and a twenty percent stake in the anticipated litigation against E*Trade.

Brown Raysman did not represent the Debtor in connection with the Ash Transactions.  Ultimately, it was not retained to represent the Debtor in its litigation against E*Trade; the litigation that was brought and is now pending in the District Court was filed on behalf of the Debtor by Cadwalader, Wickersham & Taft.

---

[1] The Brown Raysman firm also apparently provided legal representation to the Debtor with respect to a landlord-tenant dispute that is not relevant to the present motion.

**The Bankruptcy and Subsequent Proceedings**

On March 26, 2004, several creditors filed an involuntary Chapter 7 bankruptcy petition against the Debtor. This petition was initially contested, but on December 2, 2004, the Debtor voluntarily converted the case to Chapter 11. On December 20, 2004, an Official Committee of Unsecured Creditors was appointed; then on January 28, 2005 the Debtor consented to the appointment of an operating trustee.

The Creditors' Committee and the Trustee then initiated a series of Rule 2004 examinations in an attempt to unravel certain of the Debtor's complex financial transactions. On March 17, 2005, they filed this adversary proceeding, claiming that the Ash Transactions were, among other things, actual and constructive fraudulent conveyances, and seeking the return of the proceeds of the sales of the E*Trade Stock (the "Stock Proceeds"), as well as a disgorgement of profits the Ash Entities had earned from use of the Debtor's funds. The total claimed in the adversary proceeding is approximately $30,000,000.

On March 17, 2005, the Trustee moved in the adversary proceeding, by order to show cause, for a temporary restraining order preventing the Ash Entities from disposing of the alleged Stock Proceeds. The motion alleges a close relationship between the Debtor's CEO, Omar Amanat, and Rauf Ashraf, the principal of the Ash Entities. (Mem. in Support of TRO at 5.) The motion also claims that prior to EIF's formation, Ashraf and Amanat were general partners in Empyrean Investments, L.P. (not one of the Ash Entities), now renamed Epoch Investments, LP.[2] *Id.* It is alleged that Ashraf was

---

[2] Epoch is at the center of another dispute in the Chapter 11 case where it is alleged that Amanat by and through certain family members used Epoch to attempt to remove over $3,000,000 allegedly belonging to the Debtor out of the reach of creditors.

5

subsequently replaced as one of the general partners by the Ashraf Revocable Living Trust, a trust for the benefit of Omar Amanat. (Mem. In Support of TRO at 6.)[3]

Prior to the filing of this adversary proceeding, the Ash Entities were represented by Latham & Watkins, LLP. At the hearing on the TRO, the Ash Entities were represented by David Wander, Esq., and the parties there entered into a stipulation on the record whereby the Ash Entities agreed to freeze all funds presently held that were directly traceable to the Ash Transactions, some $15,000,000. The parties also stated on the record that a written stipulation would be forthcoming. On April 1, 2005, the Trustee and the Ash Entities again appeared before the Court, this time with the Ash Entities represented by Brown Raysman. Although a written stipulation had not been entered into, the Ash Entities stipulated on the record to continue the temporary relief as agreed at the initial hearing, and with the agreement of the parties, the Court calendared a hearing on a preliminary injunction for two weeks later.

On April 8, 2005, this motion was filed. In the motion, the Trustee avers that he had only just discovered a copy of the Brown Raysman Memorandum in the Debtor's files, that he concluded that Brown Raysman had a conflict of interest, and that he had asked Brown Raysman to voluntarily withdraw as counsel. The Trustee's motion also stated that Brown Raysman had refused, asserting that its previous services for the Debtor were not related to the present adversary proceeding.

Brown Raysman filed a response to this motion on April 12, 2005. Simultaneously, it also, on behalf of its clients, filed a motion to stay the adversary proceeding pending resolution of the E*Trade litigation, arguing that the Debtor was solvent in 2003 and remains solvent because of the value of that lawsuit. Brown

---

[3] It is emphasized that the Trustee's allegations have not been proved.

6

Raysman argues that it would be a waste of resources to litigate this adversary proceeding when the question of solvency can be determined by another Court, and it has also stipulated that its clients would agree in return to a continuation of the preliminary relief that had been effected. Brown Raysman subsequently filed a motion to withdraw the reference to the District Court, again asserting that one of the principal issues in the adversary proceeding is the value of the E*Trade litigation.[4]

## DISCUSSION

The Trustee contends that Brown Raysman's representation of the Debtor and the confidential information it received create the cornerstone of a conflict that mandates Brown Raysman's disqualification. Brown Raysman argues that the Trustee has not met its burden of showing that a "substantial relationship" exists between the issues in its prior representation of the Debtor and those in the present adversary proceeding. As discussed below, the Court finds that such a substantial relationship exists and that Brown Raysman must be disqualified.

**Standards for Disqualification**

A motion to disqualify highlights the tension between the competing policies of "a client's right freely to choose his counsel" and "the need to maintain the highest standards of the profession." *Government of India v. Cook*, 569 F.2d 737, 739 (2d Cir. 1978). Motions to disqualify are generally disfavored, and the movant carries "a heavy burden and must satisfy a high standard of proof." *Felix v. Balkin*, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999). However, courts must also be concerned with the "integrity of the adversary process." *Evans v. Artek Systems Corp.*, 715 F.2d 788, 792 (2d Cir. 1993).

---

[4] The motion to withdraw seeks to consolidate this adversary proceeding before the District Court hearing the E*Trade litigation.

7

There is also no question that an attorney's duty to preserve confidences remains intact after the termination of the attorney-client relationship. See *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265 (S.D.N.Y. 1953). Thus, any doubts must be resolved in favor of disqualification. See *Cheng v. GAF Corp.*, 631 F.2d 1052, 1059 (2d Cir. 1980); *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004).

Disqualification is properly granted where "an attorney's conduct tends to taint the underlying trial." *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (internal quotations omitted). Such taint is encountered "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . thus giving his present client a clear unfair advantage." *Id.*; see also, *Guerrilla Girls, Inc. v. Kaz*, 2004 WL 2238510, at *2 (S.D.N.Y. 2004).

The Second Circuit has adopted a three-part test to assist courts in determining whether a representation may become "tainted" as a result of an attorney's prior relationship with a now adverse party.[5] An attorney may be disqualified from representing his present client where:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation.

---

[5] This test is based, at least in part, on Canon Five of the ABA Model Rules of Professional Conduct. While these rules are not binding on the Federal courts, this Circuit finds them to be helpful. See *Small Blue Planet*, 331 F. Supp. 2d at 275.

8

*Evans*, 715 F.2d at 791.  The Court will examine each of these factors below.

**(a) The Debtor is a Former Client of Brown Raysman**

In the case at bar, there is no serious question that the Debtor and Brown Raysman were in an attorney-client relationship.  The Debtor entered into a retainer agreement with Brown Raysman and paid the firm to craft a detailed memorandum outlining the Debtor's potential claims against E*Trade, as well as E*Trade's defenses.  The fact that Brown Raysman was not retained to represent the Debtor in the eventual lawsuit is not dispositive.  "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result."  *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978); see also, *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 803 (S.D.N.Y. 1991).  In any event, actual employment did result here.  Entering into a retainer agreement and drafting the Memorandum establishes an attorney-client relationship for the purposes of a motion to disqualify.

**(b) The Subject Matter of Brown Raysman's Prior Representation of the Debtor is Substantially Related to Issues in This Adversary Proceeding**

The second test is whether the issues in the present adversary proceeding are "substantially related" to the subject matter of Brown Raysman's representation of the Debtor.  In order to satisfy this element, the Second Circuit requires the movant to demonstrate "that the relationship between issues in the prior and present cases are 'patently clear'" or that "the issues involved are 'identical' or 'essentially the same.'"  *Government of India*, 569 F.2d at 740.  This does not mean that a "substantial relationship" can only be shown where all of the ultimate issues are identical. See, *e.g.*, *Small Blue Planet*, 331 F. Supp. 2d at 277.  Nor does it matter that the legal issues in the

9

two representations may be different. Rather, it "is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1460, n.26 (S.D.N.Y. 1985). "If the two are congruent, then the previously acquired confidential information is at least potentially useful." *Bennett Silvershein*, 776 F. Supp. at 804. Confidential information is "useful" where the "facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same . . . ." *United States Football League*, 605 F. Supp. at 1459.

In the case at bar, a congruence – indeed, an identity of issues – exists. In its motion to stay this adversary proceeding pending the outcome of the E*Trade litigation in the District Court, Brown Raysman claims that "the most important issue in this Adversary Proceeding is whether the Debtor is solvent." (Motion to Stay at ¶ 55.) Its argument is, essentially, that the Debtor was not insolvent in 2003 because of the value of the Debtor's claims against E*Trade. (Motion to Stay at ¶ 57.) Brown Raysman contends that in deciding this adversary proceeding, the Court "will be required to assess the merits of the E*Trade Litigation, the likelihood that the Debtor's estate will prevail in the litigation and the amount of the Debtor's damages." (Motion to Stay at ¶ 59.) There could not be a closer connection between this issue, the "most important" in the adversary proceeding according to Brown Raysman, and the subject matter of Brown Raysman's prior representation of the Debtor. The Court does not agree that the solvency of the Debtor is necessarily the most important issue in this adversary proceeding, but it is undoubtedly an important issue that must be considered.

10

It does not matter, as Brown Raysman contends, that the Debtor, its former client, and the Ash Entities, its current clients, share a common interest in maximizing the recovery against E*Trade. They share a common interest in a recovery against E*Trade, but their interests may well diverge. For example, in connection with a possible settlement of that litigation, the Ash Entities might object to any settlement that did not result in the Debtor's solvency and left them with possible liability.[6] In any event, the Debtor is entitled to protection against the possibility that its former counsel will be able to use confidential information obtained during the course of prior representation in connection with its current assessment, for the benefit of the Ash Entities, of the strength *and* weakness of the E*Trade litigation. The cases require that former counsel be adverse with respect to the current litigation, not that counsel be adverse with respect to common issues. See *Solow v. W. R. Grace & Co.*, 83 N.Y.2d 303, 610 N.Y.S.2d 128, 632 N.E.2d 437 (1994).

In addition to the Debtor's solvency, another central defense of the Ash Entities is that the Debtor's 2003 liquidity crisis justified its entry into the transactions that the Trustee now challenges. (Motion to Stay at ¶ 53). The strengths and weaknesses of the Debtor's claims against E*Trade are relevant to the issue of the Debtor's liquidity. Moreover, Brown Raysman was in a position to obtain confidential information about the Debtor's financial condition that was not limited to analysis of the E*Trade litigation. It actually provided the Debtor with bankruptcy advice at this critical point of time. The Debtor is entitled to protection against the ability of the same lawyers who provided it with bankruptcy advice in 2003 to use confidential information as to the Debtor's financial condition in 2003 in defense of an adversary proceeding in which a critical

---

[6] The Brown Raysman papers advert to a possible settlement of the E*Trade litigation.

11

issue, to put it colloquially, is whether the Debtor really did need bankruptcy advice in 2003.[7]

It does not matter that there are other issues in the adversary proceeding on which Brown Raysman never represented the Debtor and that some of the legal issues are different. It is sufficient that at least one material issue is "congruent" or "identical." See *United States Football League*, 605 F. Supp. at 1459-60. More than one issue in this case is substantially identical to an issue on which Brown Raysman represented the Debtor, and the "substantial relationship" test has been met.

**(3) Brown Raysman was in a Position to Receive Confidential Information.**

The final element that the Court must consider is whether Brown Raysman "had access to, or was likely to have had access to, relevant privileged information in the course of [the] prior representation." This does not require "proof that an attorney actually had access to or received privileged information while representing the client in a prior case." *Government of India*, 569 F.2d at 740. "Instead, finding a substantial relationship leads to the presumption 'that the former client of the challenged firm imparted to the firm confidential information relevant to the present suit.'" *Guerilla Girls*, 2004 WL 2238510 at, *5, quoting *United States Football League*, 605 F. Supp. at 1461.

In the case at bar, there is no serious question that Brown Raysman had access to such information. As the Memorandum demonstrates, the firm had access to the Debtor's books and records and interviewed the Debtor's principals, in-house and outside counsel, and at least one employee. As noted above, the Memorandum discusses

---

[7] Since the firm provided the Debtor with bankruptcy advice in 2003, Brown Raysman's role might well become an issue in the adversary proceeding.

12

E*Trade's possible defenses to the claim, confirming that confidential information was disclosed.[8]  Thus, the Court finds that this element has been satisfied.

### Conclusion

Based on the foregoing, the Trustee has satisfied his burden of demonstrating that Brown Raysman is disqualified from representing the Ash Entities in this adversary proceeding.  The Trustee is directed to settle an appropriate order on three days' notice.  The order should provide a reasonable period for the Ash Entities to obtain substitute counsel and a continuation of the existing temporary relief during the interim.[9]

Dated:  New York, New York
          April 20, 2005

                                        /s/ Allan L. Gropper
                                        UNITED STATES BANKRUPTCY JUDGE

---

[8] At the hearing Brown Raysman argued that any information it received from the Debtor was already public.  However, the Memorandum demonstrates that this is not the case, particularly in that it evaluates the strengths and weaknesses of the Debtor's case.

[9] New counsel should inform the Court of a date on which they would be prepared to appear for a hearing on the Trustee's motion for a preliminary injunction; alternatively, the Court will hold a scheduling conference to schedule such a hearing.  New counsel should also inform the Court whether it desires any further argument on the Ash Entities' motion for a stay.  The Court has informally informed the parties that it sees no grounds to order a blanket stay of proceedings in this case but has not issued a decision or order and will give new counsel an opportunity to be heard on the issue if the Ash Entities so desire.