UNITED STATES BANKRUPTCY COURT    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                  Chapter 11

MARKETXT HOLDINGS CORP.,                                Case No. 04-12078

                              Debtor.

------------------------------------------------------------x
ALAN NISSELSON, as Chapter 11 Trustee of
MarketXT Holdings Corp., and the Official
Committee of Unsecured Creditors,

                              Plaintiffs,

          - against -                              Adv. No. 05-01268 (ALG)

EMPYREAN INVESTMENT FUND, L.P.,
EMPYREAN GENERAL PARTNER, LLC, ASH
MASTER FUND, II, LLC, ASH MASTER
FUND II, L.P., ASH FUND LP f/k/a EMPYREAN
FUND, LP, ASH FUND II LP, ASH CAPITAL,
LLC f/k/a, ASH CAPITAL MANAGEMENT, ASH
GENERAL PARTNER, LLC, ASH OFFSHORE
FUND, LTD., ASH GENERAL PARTNER
OFFSHORE, LTD., RAUF ASHRAF, and JOHN
DOES 1 THROUGH 10,

                              Defendants.
------------------------------------------------------------x

**MEMORANDUM OF OPINION GRANTING REQUEST FOR FEES AND EXPENSES**

A P P E A R A N C E S:

BRAUNER BARON ROSENZWEIG & KLEIN, LLP
Attorneys for Alan Nisselson, Chapter 11 Trustee, Plaintiff
    By: Howard L. Simon
61 Broadway, 18th Floor
New York, New York 10006

KAYE SCHOLER LLP
Attorneys for the Official Committee of Unsecured Creditors, Plaintiff
    By: Lester M. Kirshenbaum
        Margarita Y. Ginzburg
        Dina Rovner
425 Park Avenue
New York, New York 10022

DENNER ASSOCIATES, P.C.
Attorneys for the Defendants
    By: Gary G. Pelletier, Esq.
        Jeffrey A. Denner, Esq.
        Alexander L. Cataldo, Esq.
Four Longfellow Place, 35th Floor
Boston, Massachusetts 02114


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

       The Chapter 11 Trustee and the Official Committee of Unsecured Creditors (collectively, the "Plaintiffs") have brought a motion and supplemental motion requesting attorneys' fees and expenses incurred in the prosecution of a contempt proceeding against the above-captioned defendants (the "Defendants"). The Defendants oppose the motions, asserting that (i) attorneys' fees should not be awarded because the Court did not and should not make a finding of willfulness regarding the Defendants' conduct; (ii) even if Plaintiffs were entitled to recover fees and expenses, the amounts sought are not reasonable and appropriately attributable to the contempt proceedings; and (iii) this Court cannot decide any request for compensation submitted by the law firm of Kaye Scholer LLP ("Kaye Scholer"). For the reasons stated below, the objections are overruled and the motions are granted.

## BACKGROUND

       On July 11, 2005, Plaintiffs brought a motion (i) to hold Defendants in contempt of court for violation of a Court order put on the record of a hearing on March 18, 2005 (the "March 18

2

Order") and (ii) to require them to restore $6.7 million to funds that had been restrained pursuant to the March 18 Order. On January 10, 2006, after several hearings, the Court issued a Memorandum of Opinion (the "Opinion") finding the Defendants in civil contempt and in breach of an agreed stipulation made in open court. *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 336 B.R. 39 (Bankr. S.D.N.Y. 2006). On January 20, 2006, the Defendants filed a motion for reconsideration. On January 27, 2006, the Court denied the motion for reconsideration and entered an order on the Opinion (the "Contempt Order"). The Contempt Order provided, among other things, that Plaintiffs could move for an award of attorneys' fees and expenses in connection with the contempt motion, on notice to the Defendants, within thirty days of the entry of said order. Plaintiffs filed their joint motion for attorneys' fees and expenses incurred in the prosecution of the contempt proceeding on February 27, 2006. Defendants filed their opposition to the motion on April 3, 2006.

The facts relating to this motion are all set forth, in large part, in the Opinion, familiarity with which is assumed. In addition, there have been several relevant developments that have been made part of the record of these proceedings. These relate to Defendants' actions that the Court found to constitute a contempt of court and a violation of the March 18 Order -- transfer of $6.7 million to one Samee Bhatti in Toronto, allegedly to pay Bhatti's Canadian taxes. The Court found the testimony of Defendant Ashraf with respect to the reasons for the $6.7 million transfer to Bhatti to be unsupported and incredible, concluding that "[t]he actions Ashraf undertook with regard to Bhatti do not constitute evidence of payment of a tax liability, much less an effort to comply in good faith with the Stipulation." 336 B.R. at 57 (footnote omitted). The more recent developments confirm and support this finding. Specifically, on March 1, 2006, the Trustee commenced litigation against Bhatti in Ontario, Canada to recover the $6.7 million

3

transferred to Bhatti in violation of the March 18 Order (the "Bhatti Action"). The Trustee then moved for a preliminary injunction and temporary restraining order against Bhatti with respect to the $6.7 million, and the Ontario Superior Court of Justice in Toronto entered orders on March 3, 2006 and March 10, 2006, restraining Bhatti from taking any action with respect to the $6.7 million. On March 30, 2006, when it was learned that the funds had apparently been transferred to a Swiss bank account, the Ontario Court entered a further order directing Bhatti to return the $6.7 million to Canada and place the funds in an attorney trust account in the name of Bhatti's Canadian counsel.

Bhatti failed to comply with the Canadian order issued on March 30, and a contempt hearing was held on April 10, 2006. At that hearing, Bhatti's counsel produced a letter dated April 7, 2006, assertedly from Bhatti to Nouveaux Assets AG Zurich, the bank at which the $6.7 million was allegedly held, purporting to instruct the bank to return the money to a Bank of Nova Scotia account in Canada. However, Bhatti failed to return the money by the April 12, 2006 deadline imposed by the Ontario Court, and a warrant was issued by the Canadian Court for Bhatti's arrest on April 13, 2006.

The foregoing proceedings were commenced and prosecuted in Canada by the Trustee and his counsel. Defendant Ashraf has represented in pleadings before this Court that he supports the efforts to induce Bhatti to return the funds; however, while purporting to assist the Plaintiffs in their efforts to recover the funds from Bhatti, the Court is unaware of any tangible proof or corroboration thereof. For example, it was learned, subsequent to the issuance of the warrant for Bhatti's arrest, that Bhatti was living in Dubai in an apartment owned by a brother of Omar Amanat.[1] Defendant Ashraf traveled to Dubai, allegedly to induce Bhatti to return the

---

[1] Omar Amanat was the principal officer of MarketXT Holdings Corp., the Chapter 11 debtor on whose behalf the instant fraudulent conveyance proceeding has been brought. Members of Omar Amanat's family were involved in

4

funds. Whether or not this was Ashraf's goal, he returned home empty-handed. Prior to his return, the Defendants filed an emergency motion on June 16, 2006, requesting the use of $150,000 of the remaining funds restrained pursuant to the March 18 Order to retain counsel in Dubai allegedly to help Ashraf retrieve the $6.7 million from Bhatti and purge his contempt. Defendants assert that they have no other sources of funds to pursue Bhatti. However, Defendants provided negligible evidence that the funds would be used or would be useful for the stated purpose. All that has been established for certain is that Ashraf spent some time in Dubai, where Bhatti is living as a fugitive. In any event, the Plaintiffs opposed the motion to use $150,000 to have counsel in Dubai, and the Court denied it on June 20, 2006.

In the meantime, on April 13, 2006, the Plaintiffs filed a supplemental motion for attorneys' fees and expenses incurred in connection with the contempt proceeding and the Bhatti Action through March 31, 2006, and they have further requested leave to file a final supplemental motion for attorneys' fees and expenses at a later date. The total amount sought is $458,929.33, consisting of: (i) $67,021.80 in attorneys' fees and $5,451.53 in expenses to Brauner Baron Rosenzweig & Klein, LLP; (ii) $281,095.95 in attorneys' fees and $18,203.88 in expenses to Kaye Scholer LLP; (iii) C$19,904.14 in attorneys' fees and C$1,389.50 in expenses to Shillers, LLP; (iv) $28,962.50 in professional fees and $268.36 in expenses to Triax Capital Advisors LLC; and (v) $36,410.85 in professional fees and $221.82 in expenses to Getzler Henrich & Associates LLC.

---

various aspects of the debtor's business and ownership. The fraudulent conveyance proceeding charges, among other things, that Amanat and Defendant Ashraf acted to hinder, delay or defraud the debtor's creditors. Except for the fact that Bhatti is Amanat's cousin, it has never been explained what Bhatti is doing in Amanat's brother's apartment in Dubai.

## DISCUSSION

**I. The Defendants' Conduct was Willful**

The Court has already found the Defendants in contempt. The Defendants contend that the contempt was not willful, and thus cannot justify an award of attorneys' fees and expenses. The law is not altogether clear in this Circuit as to whether a finding of willfulness is required before a court may impose sanctions for contempt. In *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1063 (2d Cir. 1995), the Circuit Court said, "In order to award fees, the district court had to find that [the defendant's] contempt was willful." A year later, in *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996), the Court said, "While willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." Since then, there have been District Court cases that have found that willfulness is not a necessary prerequisite to an award of attorney's fees. See, e.g., *Shady Records, Inc. v. Source Enters., Inc.*, 351 F.Supp.2d 64, 67 (S.D.N.Y. 2004), where the Court held that the issue was open in this Circuit and concluded that a finding of willfulness should not be necessary in order for an award of attorneys' fees to be made. It said:

> failure to compensate the expenses of enforcing the order, where the defendants' behavior was genuinely, if not willfully, worthy of a contempt sanction would not only permit the offender to violate the court's order with impunity, but would leave the party that obtained the order worse off for its efforts to secure compliance with its rights and the court's command.

There is no need to decide here whether willfulness must be found before an award of attorneys' fees can be granted on a motion for contempt. The Second Circuit has unquestionably held that attorneys' fees *should* be awarded whenever the contemnor's conduct is willful, unless persuasive grounds exist to deny the award. *Weitzman*, 98 F.3d at 719. The Court has already made the finding that Defendants acted in bad faith in its Opinion:

6

> The record is that Ashraf *did not attempt to comply in good faith* with the representations that his duly authorized counsel had placed on the record, not even raising with counsel his plans to take almost half of the principal out of the Restrained Funds. The evidence with respect to the payment of Bhatti's "taxes" also *fails to demonstrate an attempt to comply with the Court Order* but represents instead action to place the funds beyond the jurisdiction of the Court.

336 B.R. at 55 (emphasis added). The Court reiterated its finding of bad faith later in the Opinion, when it stated that "[t]he actions Ashraf undertook with regard to Bhatti do not constitute evidence of payment of a tax liability, *much less an effort to comply in good faith* with the Stipulation." *Id*. at 57 (emphasis added). The Defendants assert that absence of good faith does not equate to intentional and willful disobedience of a court order. The Second Circuit, however, has held that the standard for proving that a party acted willfully is less stringent than the standard for proof of bad faith. See *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 n.3 (2d Cir. 2003). As this Court found that Ashraf's contumacious conduct was in bad faith, the requirement for willfulness has been satisfied and attorneys' fees and expenses can be awarded.

There is no question in this Court's mind, based on the entire record, that Ashraf acted willfully and in bad faith. Indeed, if there were ever any question as to the Defendants' willfulness, events since the Opinion have dispelled them. We now know that Bhatti never used the transferred funds for the payment of taxes and that he transferred them out of Canada where he is now subject to arrest. If there were any credibility to Ashraf's story about sending money to pay Bhatti's taxes – and the Court gave the story no credence in the Opinion – it has been dispelled by subsequent revelations. It is also relevant that Defendants' counsel have revealed that Ashraf submitted two documents to the Court that were back-dated by Ashraf and had to be withdrawn. In a letter dated May 9, 2006, Ashraf identified these documents as (i) the

7

Claims Purchase Confirmation, Amendment and Settlement Agreement (Corporate Claims), by and among Empyrean Investment Fund, L.P., MarketXT Holdings Corporation and MarketXT, Inc. and (ii) Claims Purchase Confirmation Agreement (Personal Claims), by Empyrean Investment Fund, L.P. and Epoch Investments, L.P. These documents had been the subject of oral testimony in depositions and in open court and were attached to various motions Defendants submitted to the Court. Ashraf further revealed in the May 9, 2006 letter that additional documents produced may also contain dates that were different from the date the documents were executed, but these documents were not specifically identified. On the record as a whole, Plaintiffs have established that Ashraf acted on his own behalf and on behalf of the other Defendants willfully and in bad faith so as to make Defendants liable for an award of attorneys' fees and expenses.

## II. Plaintiffs' Requests for Attorneys' Fees and Expenses are Reasonable

Having held that an award of attorneys' fees and expenses is appropriate in this case, the Court next turns to the reasonableness of the requests. A "useful starting point" for determining the reasonableness of an award of attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 89 (1989), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994). A party seeking an award of attorneys' fees must establish the number of hours reasonably expended by "[documenting] the application with contemporaneous time records" that specify, "for each attorney, the date, the hours expended, and the nature of the work done." *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Similarly, a party must establish the reasonableness of the hourly rate by demonstrating that the rates are "in line with those

8

prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); see also *Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999).

The Defendants contend that the attorneys' fees and expenses requested are not appropriate because (i) the hourly rate is excessive and not in line with the prevailing market rate; (ii) multiple attorneys attended hearings and depositions; (iii) the request for attorneys' fees and expenses after the Opinion was issued is improper; (iv) the request for experts' fees is unwarranted because there was no need for the experts' consultations; and (v) certain of the expenses requested, including meals, taxis and secretarial overtime, are not reimbursable. None of these objections has merit.

Plaintiffs have provided the Court with unredacted, contemporaneous time records that specify, for each attorney, the date, the hours expended, and the nature of the work done. The Court, upon review, deems the hours expended on the litigation to be reasonable. Based on the Court's knowledge of hourly rates in this District from its review of fee applications in many cases and its award of fees, the hourly rates charged by all firms are in line with the prevailing market rates and are reasonable.[2]

In addition, the work performed was conducted in a manner designed to avoid duplication of services and keep administrative expenses to a minimum. (See Decl. of Margarita Y. Ginzburg, ¶ 10; Decl. of Howard L. Simon, ¶ 11.) The appearance of multiple attorneys was necessary because of the complexity of the transactions at issue, and to proceed efficiently with the contempt proceeding, attorneys were assigned to, and responsible for, certain areas of

---

[2] In fact, a review of Kaye Scholer's application for employment as counsel for the Committee, which was approved by another judge of this Court in light of Bankruptcy Rule 5002(b) (see Point III, below), shows that the firm projected hourly rates consistent with the hourly rates requested here, subject to periodic adjustments. The Court sees no reason now to view these hourly rates as excessive.

9

examination at the depositions and hearings based on their individual knowledge of the facts, expertise and review of documents. The occasional meal or taxi charged is consistent with practice and does not make the overall fee and cost request unreasonable.

Further, Plaintiffs' experts, specifically Triax Capital Advisors LLC and Getzler Henrich & Associates LLC, aided Plaintiffs in understanding the structure of the Defendant entities, the nature and extent of the dissipation of the Restrained Funds, and what the tax returns reflected based on the structure of the companies and the flow of funds between the various entities. (See Decl. of William H. Henrich, ¶ 4; Decl. of Robert Rosenfeld, ¶ 4.) Defendants, it will be recalled, claimed that the looted funds were to be used to "pay taxes," and tax analysis was therefore reasonable. Time billed for work relating to the above-captioned adversary proceeding but not the contempt proceeding was segregated from the fees requested on the contempt motion, and time billed for work relating to both the contempt proceeding and the underlying adversary proceeding was allocated at fifty percent or by a reasonable methodology. (See Decl. of William H. Henrich, ¶ 6; Decl. of Robert Rosenfeld, ¶ 6.) Thus, the amounts requested to reimburse the fees of the experts are reasonable.

Finally, much of the work performed after the date the Opinion was issued related to Plaintiffs' attempts to retrieve the $6.7 million sent to Bhatti. Had the Defendants cured their contempt as ordered by this Court, there would have been no need for the expenses incurred in litigating the Bhatti Action. No objection was made to the reasonableness of the attorneys' fees and expenses relating to the Bhatti Action, including the fees requested by Plaintiffs' Canadian counsel, Shillers, LLP, and the Court finds them to be reasonable.

### III. The Court Can Decide Plaintiffs' Motions for Attorneys' Fees and Expenses as to Kaye Scholer

The Defendants also contend that the undersigned cannot adjudicate Plaintiffs' motions for attorneys' fees and expenses in light of the fact that his son is an associate at the Kaye Scholer firm, even though his son has not participated and will not participate in any aspect of the MarketXT Holdings Corp. or related cases. No question has been – or could properly be – raised under the general recusal statute that the undersigned is disqualified from hearing the cases. 28 U.S.C. § 455(b)(5)(iii) requires disqualification where a relative within the third degree of relationship to the judge "[i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." However, it is well accepted that a judge's relative does not have an "interest that could be substantially affected" where the relative is an associate, as opposed to a partner, in a firm and does not participate in the case. *United States ex. rel. Weinberger v. Equifax*, 557 F.2d 456, 463-64 (5th Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978); *Holmberg v. Morrisette*, 800 F.2d 205, 209 n.3 (8th Cir. 1986), *cert. denied*, 481 U.S. 1028 (1987); *Cloverdale Equip. Co. v. Manitowoc Eng'g Co.*, 964 F. Supp. 1152, 1155-56 (E.D. Mich. 1997), *aff'd on other grounds*, 149 F.3d 1182 (6th Cir. 1998) (unpublished opinion); *Faith Temple Church v. Town of Brighton*, 348 F.Supp.2d 18, 19-21 (W.D.N.Y. 2004); see also 9 *Collier on Bankruptcy* ¶ 5004.01[1][f] (15th ed. rev. 2006). The same cases make clear that the fact that a judge's relative is an associate at a firm of one of the parties does not in and of itself create an appearance of impropriety that requires recusal under 28 U.S.C. § 455(a).[3] See also Fed. R. Bankr. P. 5004(a).

---

[3] Moreover, at the outset of the case and on each occasion on which the Defendants substituted counsel, the Court disclosed his familial connection to Kaye Scholer and requested that any party subsequently inform the Court by

11

Nevertheless, the Bankruptcy Rules go beyond the general rules governing disqualification in two respects.  Fed. R. Bankr. P. 5004(b) provides that "[a] bankruptcy judge shall be disqualified from allowing compensation to a person who is a relative of the bankruptcy judge or with whom the judge is so connected as to render it improper for the judge to authorize such compensation."  Fed. R. Bankr. P. 5002(b) further prohibits a bankruptcy judge from approving the appointment of a relative or a person "so connected" with either the judge or the United States trustee so as to render the appointment or employment improper.  9 *Collier on Bankruptcy* ¶ 5002.01.  Rule 5002(a) further provides that if a person is disqualified under the subdivision, all associates or members of the firm may not be approved for appointment.  These restrictions, which are in substance antinepotism statutes dating from the time when bankruptcy referees and judges had much more authority over the appointment of estate representatives than they do now, go beyond the usual rules of disqualification.  9 *Collier on Bankruptcy* ¶ 5002. RH[1].

In light of the Bankruptcy Rules, when Kaye Scholer was first retained by the Creditors Committee, the Court referred the application for Kaye Scholer's appointment to the chief judge of the Court and stated, on the record, that it could not "decide any Kaye Scholer applications for compensation because of the Bankruptcy Rules."  (Tr. Hr'g on Aug. 12, 2005 at 29.)  The Defendants contend that this reference in effect constituted a determination that it cannot award fees to Kaye Scholer on this motion.  The Court's prior statement, however, referred to applications for compensation from the estate that arise in the normal course of bankruptcy proceedings and are governed by Rule 5004(b).  The question now at bar is whether Rule 5004(b) applies to sanctions for civil contempt in the form of attorneys' fees and expenses.  The

---

letter whether it believed there was an appearance of impropriety if the Court heard the cases.  No party has so responded.

12

Advisory Committee Note to Rule 5004(b) indicates that it does not. The Advisory Committee's Note states that subdivision (b) "precludes a bankruptcy judge from allowing compensation from the estate ... ." This interpretation of Rule 5004(b) is repeated in the Advisory Committee Note to Rule 5002: "Rule 5004(b) provides that if compensation from the estate is sought for these services, the bankruptcy judge is disqualified from awarding compensation." See also *Collier on Bankruptcy* App. ¶ 5002[2] at p. 5002-15.

Here, the Plaintiffs are not requesting that their fees be allowed from estate funds. Rather, the estate is seeking damages from a third party measured by the amount of these fees, and the Plaintiffs have asked the Court for permission to recover their fees from the funds that were restrained pursuant to the March 18 Order, funds that are admittedly property of the Defendants. Moreover, the Court's authority to grant such a request comes not from the Court's power to grant compensation to estate representatives but from its inherent judicial power to assess attorneys' fees against a party that has willfully disobeyed a court order or acted in bad faith. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); see also *Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 187 (2d Cir. 1990); 11 U.S.C. § 105(a). The underlying rationale for such "fee shifting" is not compensatory in nature, but punitive, because it "is not a matter of substantive remedy, but of vindicating judicial authority." See *Chambers*, 501 U.S. at 55; see also *Hutto v. Finney*, 437 U.S. 678, 691 n.17 (1978), where the Supreme Court said that an award of attorneys' fees in the present circumstances serves the same purpose "as a remedial fine imposed for civil contempt," and the fact that "the award has a compensatory effect does not in any event distinguish it from a fine for civil contempt, which also compensates a private party for the consequences of a contemnor's

13

disobedience." Rule 5004(b) does not apply. The Court can, accordingly, adjudicate the motions as to Kaye Scholer's fees and expenses.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiffs' motion and supplemental motion for attorneys' fees and expenses as follows: (i) $67,021.80 in attorneys' fees and $5,451.53 in expenses to Brauner Baron Rosenzweig & Klein, LLP; (ii) $281,095.95 in attorneys' fees and $18,203.88 in expenses to Kaye Scholer LLP; (iii) $18,561.08, equivalent to C$19,904.14 in attorneys' fees and C$1,389.50 in expenses, to Shillers, LLP; (iv) $28,962.50 in professional fees and $268.36 in expenses to Triax Capital Advisors LLC; and (v) $36,410.85 in professional fees and $221.82 in expenses to Getzler Henrich & Associates LLC. Plaintiffs may bring a further motion for attorneys' fees and expenses on the basis of further developments in the Bhatti Action. The Plaintiffs shall settle separate orders on two days' notice.

Dated: New York, New York
       July 21, 2006

                                        */s/ Allan L. Gropper*
                                        UNITED STATES BANKRUPTCY JUDGE

14