| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x<br>In re:<br><br>MARKETXT HOLDINGS CORP.,<br><br> Debtor. <br>------------------------------------------------------------x<br>ALAN NISSELSON, as Chapter 11 Trustee of<br>MarketXT Holdings Corp., and the Official<br>Committee of Unsecured Creditors,<br><br> Plaintiffs, <br> - v. - <br>EMPYREAN INVESTMENT FUND, L.P.,<br>EMPYREAN GENERAL PARTNER, LLC,<br>ASH MASTER FUND, LP, ASH MASTER<br>II, LLC, ASH MASTER FUND II, LP,<br>ASH FUND, LP f/k/a EMPYREAN<br>FUND LP, EMPYREAN FUND, LP,<br>ASH FUND, LP f/k/a EMPYREAN INVESTMENT<br>FUND, LP, ASH FUND II LP, ASH CAPITAL, LLC<br>f/k/a ASH CAPITAL MANAGEMENT, ASH<br>GENERAL PARTNER, LLC, ASH OFFSHORE<br>FUND LTD, ASH GENERAL PARTNER<br>OFFSHORE, LTD, ASH MARKET NEUTRAL<br>FUND, LTD and RAUF ASHRAF<br><br> Defendants. <br>------------------------------------------------------------x | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 04-12078 (ALG)<br><br><br><br><br><br><br><br><br><br><br>Adv. No. 05-01268 (ALG) |

**ORDER FOR ENTRY OF JUDGMENT**

The Court has received letters from the parties, dated May 7, 17 and 26, clarifying their

positions with respect to the principal amount of the judgment to be entered on this Court's

memorandum of opinion dated March 12, 2010, *In re MarketXT Holdings Corp.*, 426 B.R. 467

(Bankr. S.D.N.Y. 2010) (the "Memorandum of Opinion), finding that Plaintiffs are entitled to

avoid the transfer from the Debtor to Defendant Empyrean Investment Fund ("EIF") of the

proceeds of the so-called STARS transaction. The remaining issue concerns the amount of the judgment. The Plaintiffs have conceded that certain portions of the STARS proceeds were transferred by EIF to or for the benefit of the Debtor and should be credited to EIF's benefit, reducing the judgment by $3,685,273.97 to $11,836,122.03. Defendant EIF contends in its May 17 letter that an additional $2,625,000 should be credited, but the Court finds that this amount must be adjusted downward to $2,457,000 to account for a mathematical miscalculation and Defendant's inclusion of certain amounts which were already conceded by Plaintiffs.[1] EIF also contends that an additional $154,554.65 relating to payments to third parties should be credited, but that amount was unsupported by EIF and was not even included in Trial Exhibit 61, which set forth the claimed credits. That leaves $2,457,000 as the "Disputed Credits."

As noted, the Disputed Credits were included in Trial Exhibit 61 and were the subject of the trial testimony of EIF's principal, Rauf Ashraf ("Ashraf"). He asserted generally that each transfer set forth in Exhibit 61 benefited the Debtor and was made at the Debtor's request. The Plaintiffs did not adduce any specific evidence to the contrary. Plaintiffs claim nevertheless that EIF did not sustain its burden of proving a defense to a fraudulent conveyance action under 11 U.S.C. § 548(c) and analogous State law, and that in its Memorandum of Opinion, the Court rejected Defendant's claim that it gave value in good faith to the Debtor. They further assert that Ashraf's generalized testimony did not meet Defendant's burden, especially as the Court has found that Ashraf and the Debtor's principal, Omar Amanat, acted in concert to hinder, delay or defraud the Debtor's creditors.

---

[1] In its May 17 letter, EIF contends that it is entitled to a credit of an additional $2,625,000, above those already conceded by Plaintiffs, based on the following transfers: (1) $757,000 to Acument on April 25, 2003 and June 13, 2003, (2) $100,000 to TCorp on May 1, 2003, (3) $200,000 to TCorp on May 8, 2003, (4) $100,000 to Tradescape on April 17, 2003, (5) $100,000 to MarketXT Holdings on December 19, 2003, (6) $450,000 to MarketXT Holdings on September 22, 2004 and (7) $900,000 to MarketXT Holdings on October 12, 2004. The aggregate total of those transfers is $2,607,000, not $2,625,000. Further, in their letter dated May 7, 2010, the Plaintiffs had already conceded to transfers (2), (4), (5), (6), and a $400,000 portion of transfer (7).

2

In the Memorandum of Opinion, the Court dealt with EIF's generalized claims that it gave value in good faith to the Debtor, not that it was entitled to credit for specific limited sums returned to the Debtor or paid out at its behest.  The fact that some of the STARS proceeds were returned to the Debtor (and in some cases used to fend off the most assertive of the Debtor's creditors) does not preclude avoidance of the balance of the funds that EIF has continued to withhold.  On the other hand, the fact that Ashraf and Amanat acted in concert to hinder, delay or defraud the Debtor's creditors does not preclude such credits, as the Plaintiffs implicitly agree by conceding a number of them.  The Plaintiffs claim that there is extra-record evidence that the Disputed Credits never benefited the Debtor or its creditors, but they did not establish this at trial.  The Court cannot take judicial notice of the wrongdoing attributed to EIF.  For example, during the five years this case has been pending, there have been various proceedings relating to the Debtor's investment in Acument, one of the Disputed Credits.  There is nothing in the record of this adversary proceeding, however, that establishes that Defendant EIF or its principal was acting in bad faith in making the Acument investment at the Debtor's behest.  Ashraf testified without contradiction that this credit and the other Disputed Credits were transferred to or for the benefit of the Debtor.  (Tr. 85-95, Nov. 2, 2009).

Based on the foregoing and all prior proceedings, Defendant EIF is entitled to the Disputed Credits.  Judgment in the principal sum of $9,379,122.03 ($11,836,122.03 less $2,457,000) will be entered against Defendant EIF, and the action shall be severed against all of the other Defendants.

As to the rate of interest, another disputed issue, Plaintiffs request that they be awarded pre-judgment interest with respect to the STARS transaction at the New York State statutory rate of nine percent from the date the transfer was made.  Plaintiffs' cause of action was sustained

3

under both Federal and New York State fraudulent conveyance laws and in its November 9, 2007 judgment related to the Collar transaction (Docket. No. 348, the "Collar Judgment"), the Court awarded pre-judgment interest at the New York State rate. The Court will award interest at this rate. *See Shamis v. Ambassador Factors Corp.*, 2001 WL 25720, *7 (S.D.N.Y. Jan. 10, 2001); *see also Pereira v. Goldberger (In re Stephen Douglas, Ltd.)*, 174 B.R. 16, 15 (Bankr. E.D.N.Y. 1994). However, it will accrue interest from the date that the adversary proceeding was commenced, rather than the date of the transfer. This is also consistent with the Collar Judgment and cases on the issue that award pre-judgment interest on a claim for fraudulent conveyance brought under New York State law from the date that the adversary proceeding commenced, rather than when the transfer was made. *See Geltzer v. Artists Marketing Corp. (In re The Cassandra Group)*, 338 B.R. 583, 600 (Bankr. S.D.N.Y. 2006). The latter date is appropriate in this matter in that Defendant returned certain of the funds during the period after the initial transfer and prior to the date the adversary proceeding was commenced, resulting in the credits.

An appropriate judgment will be entered.

**IT IS SO ORDERED.**

Dated: New York, New York
June 4, 2010

*/s/ Allan L. Gropper*
UNITED STATES BANKRUPTCY JUDGE